UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

REPORT AND RECOMMENDATION

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Michael Ross Behr,

        Plaintiff,

  v.

United States of America,

        Defendant.        Civ. No. 09-502 (JRT/RLE)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## I.  Introduction

This matter came before the undersigned United States Magistrate Judge pursuant to a special assignment, made in accordance with the provisions of Title 28 U.S.C. §636(b)(1)(B), upon the Government's Motion to Dismiss, and the Motion of the Plaintiff Michael Ross Behr ("Behr") to Dismiss in Part.  A Hearing on the Motion was conducted on December 10, 2009, at which time, Behr appeared on his own behalf, and the Government appeared by Hilarie E. Snyder, Assistant United States Attorney.  For reasons which follow, we recommend that the Government's Motion be granted, and that Behr's Motion be denied.

## II.  Factual Background

Behr filed his Complaint on March 3, 2009, in which he alleges, pursuant to Title 26 U.S.C. §§7433, 7432, 6325, 6304, and 7430,[1] that the United States Internal Revenue Service ("IRS") erroneously, intentionally, and recklessly, placed liens on his property in Hubbard County, Minnesota, and in Indiana; failed to release the liens; improperly sold his Minnesota property; and caused Behr to be harassed, oppressed, and abused.  See, Complaint, Docket No. 1, at pp. 1-3.

This action arises from a long history of disputes between Behr and the IRS. Behr alleges that, since 1992, the IRS "has executed a continuing tort of intentional, erroneous, and reckless collection of taxes * * * buttressed by harassment, oppression and abuse."[2]  Complaint, supra at ¶1.  He further alleges that harassment, oppression,

_____

[1]Title 26 U.S.C. §7430(a)(2) provides for the award of reasonable litigation costs against the Government that are incurred in lawsuits which are related to taxes.

[2]The Complaint contains several pages which explain the origin of Behr's private practice, as a litigation consultant in forensic economics, including a defamation suit that he brought against several individuals, in order to explain why, in 1992 and 1993, Behr claimed attorney fees resulting from the lawsuits as deductible business expenses.  Id. at ¶¶9-21.  The IRS classified the attorneys fees as non-deductible personal expenses, adding $11,450.00 to Behr's tax liability for those years.  Id. at 22.  At the Hearing, Behr represented that that information was solely for background purposes, and the Complaint alleges that the dispute, as to that time period, has been resolved.  Id. at ¶34.  Accordingly, we do not address that aspect of
(continued...)

and abuse, have been the foundation for all of the IRS's dealings with him, id. at ¶61, causing a number of harms to his business and personal relationships, in addition to an alleged over-collection of taxes. Id. at ¶¶62-63.

Behr alleges that the IRS's application of collected funds to his tax liabilities, for the years 1992 through 1995, was in violation of the settlement reached in a previous action, id. at ¶6, and that he received a "scurrilous letter" from IRS Agent James Barker ("Barker"), which is dated May 30, 1996, and in which Barker stated that the IRS had assessed Behr's unpaid tax liability, for the period of 1992 to 1993, at $216,415.01, and threatened to seize the Plaintiff's property or cause a criminal action to be filed if Behr did not pay that assessed liability. Id. at ¶27-28.

Behr filed for bankruptcy protection on April 23, 1997, in order to prevent a tax sale of his Indiana residence. Id. at ¶31. In those proceedings, the IRS filed a Proof of Claim for $147,475.48, which comprised a tax liability of $123,966.66 -- that Behr contends was accurate -- together with penalties of $4,784.05, and interest of $18,724.[3] Id. at ¶32. Behr voluntarily dismissed his Bankruptcy Petition on April 25,

---

[2](...continued)
the Complaint for purposes of the cross Motions to Dismiss.

[3]In a bankruptcy action, "[i]f an unsecured creditor wishes to participate in the
(continued...)

2001, believing that he had prevailed on a disagreement with the IRS concerning his 1992 tax liability. Id. Behr alleges that, upon the dismissal of the bankruptcy, he paid $87,764.07 to the IRS, from the refunded Bankruptcy Estate. Id. at ¶38.

Behr further alleges that, in 2002, he sold his Indiana residence for $800,000.00, and that, at that time, the IRS required him to pay $135,782.75 in order to clear title to that property. Id. at ¶43. According to Behr, the IRS had assessed his unpaid tax liability at $136,196.62, id.; Complaint, Exhibit No. 5 ("Exh. 5"), Docket 1-1, at p. 7 of 16,[4] and the 2002 payment satisfied his tax liabilities through 2001,

---

[3](...continued)
distribution of the assets of a bankruptcy estate, the creditor must file a timely proof of claim with the bankruptcy court." In re Nowak, 586 F.3d 450, 454 (6th Cir. 2009), citing Rule 3002(a), Federal Rules of Bankruptcy Procedure. A properly executed and filed proof of claim constitutes "prima facie evidence of the validity and amount of the claim.'" Id. at 454-55, quoting Rule 3001(f), Federal Rules of Bankruptcy Procedure. A secured creditor must file a proof of claim in order to protect any amount owed, which is in excess of the value of the lien on the property securing it. Id. at 455-56, citing Title 11 U.S.C. §506(a)(1) and Rule 3002(a), Federal Rules of Bankruptcy Procedure.

[4]Exh. 5 appears to be a self-created statement of tax liability, without the application of the 2007 property sale proceeds, from the years 1992 to 2001, which is not authenticated, and is not self-authenticating. Accordingly, we treat that Exhibit, and all others like it -- including those that Behr submitted on the date of the Hearing -- as argument, and not evidence, with respect to our examination of the Motions to Dismiss, which remain based on the pleadings. See, Shanklin v. Fitzgerald, 397 F.3d 596, 602 (8th Cir. 2005), cert. denied 546 U.S. 1066 (2005) (unauthenticated
(continued...)

except for the inconsequential amount of $413.87.  See, <u>Complaint</u>, supra at ¶43.

Behr alleges that the IRS applied only $112,225.05[5] of his 2002 payment to his tax

liability, leaving $23,557.10 unaccounted for, and uncredited.  <u>Id.</u> at ¶44; <u>IRS</u>

<u>Transcript Credits</u>, <u>Plaintiff's Exhibit 6 ("Transcript")</u>, <u>Docket 1-1</u>, at p. 8 of 16.

Behr alleges that, from 2002 to 2005, the IRS illegally secured liens on his

property, prompting him to file for bankruptcy protection, in Minnesota, in 2006.  <u>Id.</u>

at ¶¶48, 50.  Behr contends that the IRS intentionally or recklessly filed an inaccurate

Proof of Claim for $539,723.43, in the 2006 proceeding.  <u>Id.</u> at ¶¶50, 61; <u>Proof of</u>

<u>Claim</u>, <u>Exhibit 9 ("Proof of Claim")</u>, <u>Docket 1-1</u>, at p. 13-14 of 16.  As a result of the

amount of the IRS's Proof of Claim, Behr asserts that he was unable to complete a

bankruptcy plan, or prevent the tax sale of his Minnesota Property.  See, <u>Complaint</u>,

supra at ¶51.  Behr further alleges that the IRS's failure to release its liens on his

property prevented him from obtaining a mortgage, which would have allowed him

_____

[4](...continued)
submissions may not be considered as evidence).

[5]We note that this figure is marginally different from the total of the individual
payments that Behr has marked on the Transcript of $112,215.05.

to pay the $130,400.40[6] owed, and prevented the tax sale, id. at ¶57, and that he requested the IRS to subordinate its lien, which it did not.  Id. at ¶68, p. 28.

Behr alleges that, in April of 2006, IRS agents Richard Wallin and Christopher Rothweiler came to Behr's home in order to collect an alleged $401,388.22 tax liability, cut him off as he tried to explain himself, and stated that they were not interested in efficiency.  Id. at ¶¶54-55.

Behr alleges that, in 2007, the IRS intentionally under-appraised his Minnesota property, id. at ¶52, improperly sold it on March 14, 2007, id. at ¶51, and erroneously applied $249,149.31 of the $308,000 proceeds, from the 2007 sale, to the tax period from 1997 to 2001.  Id. at ¶57; Seized Property Sale Report, Complaint, Exhibit No. 7 ("Property Sale Report"), Docket 1-1, at p. 9 of 16.  He alleges that, had the tax sale proceeds been properly applied to the years after 2001, the IRS should have paid him $89,380.06 as surplus.  Id. at ¶45-47; Complaint, Exhibit No. 8 ("Exh. 8"), Docket 1-1, at p. 12 of 16.[7]  Behr alleges that, after the sale of his property, the IRS continued

---

[6]Behr cites to the Complaint, Exhibit 10, Docket 1-1 ("Exh. 10"), at p. 15 of 16, for this figure, which also appears to be a self-created statement of his tax liabilities from 1992 to 2008.

[7]Exh. 8 appears to be a self-created statement of tax liability, with the 2007 tax sale proceeds applied to the years 2002 to 2008, rather than 1997 to 2001.

to illegally collect funds, totaling $400,000, see, <u>Complaint</u>, supra at ¶5, and he asserts that, as of September 30, 2009, the IRS held liens on his property totaling $802,849.00. See, <u>Behr's Response in Opposition/Motion to Dismiss ("Behr's Response")</u>, <u>Docket No. 12</u> at p. 7.

Behr alleges that he owes the IRS $86,684.00 in interest on his unpaid taxes, from 2002 to 2008. <u>Id.</u> at ¶59; <u>Complaint</u>, <u>Exhibit No. 11("Exh. 11")</u>, <u>Docket 1-1</u>, at p. 16 of 16.[8] Behr maintains that the IRS owes him interest on the tortious sale of his Minnesota property, in the amount of $59,409.00, based upon an appraisal of $410,000.00, and a seven (7) percent interest rate. <u>Id.</u> at ¶60.

According to Behr, he has exhausted his administrative remedies, by filing Administrative Claims on April 19, 2007, April 20, 2007, and July 13, 2007, which were denied. <u>Id.</u>, at ¶68, p. 25. Behr also alleges that he requested a Collection Due Process Hearing on May 17, 2006, and that he received a denial of that request on April 10, 2007. <u>Id.</u> at p. 28.[9]

---

[8]Plaintiff's Exhibit No. 11 appears to be a self-created statement of interest accrual for Behr's unpaid tax liabilities from 2002 forward.

[9]We defer our recitation of other facts, which we regard as bearing upon the Motions before us, to our analysis of the specific arguments in the Motions presented.

Behr seeks damages, pursuant to Title 26 U.S.C. §§7432 and 7433, for the alleged statutory violations, in the amount of $926,038.78, in order to compensate him for the missing 2002 payment, for a counterclaim he alleges arose in a bankruptcy proceeding, as a result of the IRS's conduct, for interest he alleges the IRS owes to him, as a result of the amount he alleges the IRS has collected in excess of his tax liabilities, for the difference between his appraisal of the value of his Minnesota property, and the amount for which the IRS sold it, for the time lost to his economic forensics practice, for the full amount of the IRS's 2006 Proof of Claim, and for the costs of this lawsuit. Id. at ¶61, 70, 71, and 72.

### III. Discussion

We read Behr's pleadings liberally, as he appears pro se. See, Estelle v. Gamble, 429 U.S. 97, 106 (1976). Upon an indulgent reading, the Complaint alleges that the IRS has intentionally engaged in conduct which is in violation of the Internal Revenue Code, and the natural consequence of which is to harass, oppress, and abuse Behr, in violation of the Internal Revenue Code, and specifically, Title 26 U.S.C. §6304(b). Additionally, Behr alleges that the IRS failed to release its lien on his Minnesota property, prior to the 2007 tax sale, in violation of Title 26 U.S.C. §6325.

A      Standard of Review.  A party may challenge a Court's subject matter jurisdiction at any time, under Rule 12(b)(1), Federal Rules of Civil Procedure, since such a defense may not be waived.  See, Moubry v. Independent School District No. 696, 951 F. Supp. 867, 882 (D. Minn. 1996), citing Northwest Airlines, Inc. v. Transport Workers, 451 U.S. 77, 95 (1981); Bueford v. Resolution Trust Corp., 991 F.2d 481, 485 (8th Cir. 1993)("Lack of subject matter jurisdiction * * * cannot be waived[;] [it] may be raised at any time by a party to an action, or by the court sua sponte.").  "In order to properly dismiss an action under Rule 12(b)(1), the challenging party must successfully attack the Complaint, either upon its face or upon the factual truthfulness of its averments."  Moubry v. Independent School Dist. No. 696, supra at 883, citing Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993); Osborn v. United States, 918 F.2d 724, 729 n. 6 (8th Cir. 1990).

If the defendant brings a facial challenge -- a challenge that, even if truthful, the facts alleged in the Complaint are insufficient to establish jurisdiction -- the Court reviews the pleadings alone, and "the non-moving party [is afforded] the same protections that it would receive under a Rule 12(b)(6) motion to dismiss."  Carlson Holdings, Inc. v. NAFCO Ins. Co., 205 F. Supp.2d 1069, 1073 (D. Minn. 2001), citing Titus v. Sullivan, supra at 593; Osborn v. United States, supra at 729 n. 6.

Accordingly, "[t]he court presumes that all of the factual allegations in the complaint concerning jurisdiction are true and will not dismiss the claims unless the plaintiff fails to allege an essential element for subject matter jurisdiction." Carlson Holdings, Inc. v. NAFCO Ins. Co., supra at 1073.

However, in factual challenges to subject matter jurisdiction -- contending that the allegations in the Complaint, that are intended to establish jurisdiction, are insufficiently supported by the facts -- the Court "may consider matters outside the pleadings and the non-moving party does not benefit from the safeguards of 12(b)(6)." Id. When a plaintiff's "'allegations of jurisdictional facts are challenged by his adversary in any appropriate manner, he must support them by competent proof,'" "[a]nd * * * for that purpose the court may demand that the party alleging jurisdiction justify his allegations by a preponderance of the evidence.'" Zunamon v. Brown, 418 F.2d 883, 886 (8th Cir. 1969), quoting McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

Further, when reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and "construe those facts in the light most favorable to the [nonmoving party]." Riley v. St. Louis County, 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999), citing Double D Spotting

Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir. 1998); see also, Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004).  All reasonable inferences, from the facts alleged in the Complaint, must also be drawn in favor of the nonmoving party.  See, Maki v. Allete, Inc., supra at 742.  "A complaint shall not be dismissed for its failure to state a claim upon which relief can be granted unless it appears beyond a reasonable doubt that plaintiff can prove no set of facts in support of a claim entitling him to relief."[10]  Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001), citing Breedlove v. Earthgrains Baking, 140 F.3d 797, 799 (8th Cir. 1998); see also, Maki v. Allete, supra at 742; Helleloid v. Independent School Dist. No. 361, 149 F. Supp. 2d 863, 866-67 (D. Minn. 2001).

"Nevertheless, dismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity."  Young v. City of St. Charles,

---

[10]We recognize that the "no set of facts" standard, in reviewing Motions to Dismiss, was abrogated by the Supreme Court in Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 127 S.Ct. 1955, 1969 (2007)(the standard in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), of "no set of facts" "has earned its retirement.").  Nevertheless, the abrogation did not change the Court's "accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  Id. at 1960.  Here, we apply the Supreme Court's "accepted pleading standard."

supra at 627, citing <u>Neitzke v. Williams</u>, 490 U.S. 319, 326-27 (1989). "To avoid dismissal, a complaint must allege facts sufficient to state a claim as a matter of law and not merely legal conclusions." <u>Id.</u>, citing <u>Springdale Educ. Ass'n v. Springdale Sch. Dist.</u>, 133 F.3d 649, 651 (8th Cir. 1998); see also, <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544,127 S.Ct. 1955, 1964-65 (2007)("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.").

Here, the Government makes a facial challenge to the Complaint, thereby taking the facts alleged as true. See, <u>Government's Memorandum in Support of Motion ("Gov't Memo"), Docket No. 7</u>, at p. 3. As a consequence, we examine only the Complaint and attached Exhibits in our review of the sufficiency of the allegations contained therein.

B. <u>Legal Analysis</u>. As a preliminary matter, prior to filing a claim under Sections 7432 or 7433, a taxpayer is required to submit an administrative claim for damages to the IRS, see, <u>26 C.F.R. §§301.7432-1(e) and 301.7433-1(d)</u>, and the Eighth Circuit has held that such a submission is a jurisdictional requirement. See,

Porter v. Fox, 99 F.3d 271, 274 (8th Cir. 1996); see also, Mathis v. United States, 2003 WL 1950071 at *3 (D. S.D. March 19, 2003). Behr alleges that he filed three (3) separate Administrative Claims, and at least one appeal, which were all denied. See, Complaint, supra at ¶68, pp. 25, 30. The Government does not challenge that allegation and, taking the Complaint as true, we find that Behr has exhausted his administrative remedies.

Further, in his argument at the Hearing, Behr asserted that his Complaint is supported by Title 28 U.S.C. §1346, and Title 26 U.S.C. §6404, see, Exhibits for Oral Arguments, Exhibit No. 1, and we address his asserted claim under Section 1346 before addressing the substance of his numerous other claims. Title 28 U.S.C. §1346 provides its own cause of action for a refund of taxes paid. See, Shreiber v. Mastrogiovanni, 214 F.3d 148, 151 (3rd Cir. 2000). The Internal Revenue Code imposes strict time lines, and requirements, before a plaintiff may file an action pursuant to Section 1346, see, United States v. Elkhorn Min. Co., 553 U.S. 1, 128 S.Ct. 1511, 1514 (2008), including that the taxpayer must first pay "the full amount of an income tax deficiency." Schon v. United States, 759 F.2d 614, 617 (7th Cir. 1985), citing Flora v. United States, 357 U.S. 63, 75-76 (1958).

Notably, Behr has not pled that he has paid the full amount of tax liability assessed for any year except 1996. See, <u>Complaint</u>, supra at ¶26.[11] Accordingly, the Court does not have jurisdiction to hear his claim, under Section 1346, related to any of the years he challenges here -- for most years because he has not paid his tax liability for the year in question, and for 1996, because the claim is time-barred. Accordingly, we recommend a dismissal of his claims. See, <u>Boynton v. United States</u>, 566 F.2d 50, 52 (9th Cir. 1977)("It has long been established that partial payment of assessed taxes or a proposed deficiency is insufficient to support jurisdiction in the District Court of a refund suit under 28 U.S.C. § 1346."); <u>Kaffenberger v. United States</u>, 314 F.3d 944, 958 (8th Cir. 2003)(same). Even though we are without jurisdiction to adjudicate the merits of Behr's specific claims, in the interests of

---

[11]With respect to Behr's claim for a refund as to 1996, to the extent he may attempt to raise it -- which is not clear from the pleadings -- that claim is barred by the statute of limitations which applies to refund suits. A claim for a refund must be brought within the two-year statutory period established by Title 26 U.S.C. §6532, after an administrative claim has been brought pursuant to Section 6511(a), which provides that a taxpayer must file a claim with IRS within two (2) years of paying the liability, or within three (3) years of filing the return, whichever is later. See, <u>United States v. Dalm</u>, 494 U.S. 596, 602 (1990); <u>26 U.S.C. §6511(a)</u>. The payment which Behr made in 1996, even allowing for the time to file a claim for refund with the IRS, is plainly outside the statutory period, and we have no jurisdiction to consider it, as untimely. See, <u>In re Pransky</u>, 318 F.3d 536, 544 (3rd Cir. 2003)("the timeliness of a refund claim is jurisdictional")[quotation omitted].

completeness, we proceed to evaluate their legitimacy, starting with his claim under Section 7433.

A.    Behr's Claims Under Title 26 U.S.C. §7433.  Title 26 U.S.C. §7433(a) provides a cause of action against the United States when, "in connection with any collection of Federal tax with respect to a taxpayer, any officer or employee of the Internal Revenue Service recklessly or intentionally, or by reason of negligence disregards any provision of this title, or any regulation promulgated under this title." See also, Gunnink v. United States, 2008 WL 3166308 at *5 (D. Minn., August 4, 2008)[collecting cases]; Buiaz v. United States, 471 F. Supp.2d 129, 135-36 (D. D.C. 2007).

The weight of the authority in the District Courts demonstrates that, when a taxpayer raises a claim under Section 7433, "the taxpayer must demonstrate that the IRS did not follow the prescribed methods of acquiring assets," and, "[a]bsent allegations that the IRS engaged in improper collection procedures, even if those procedures followed an improper assessment activity, [a] plaintiff cannot collect damages under Section 7433."  Dockery v. U.S. Department of Treasury, 593 F. Supp.2d 258, 260 (D. D.C. 2009); Shaw v. United States, 20 F.3d 182, 184 (5th Cir. 1994), cert. denied, 115 S.Ct. 635 (1994); Brewer v. CIR, 430 F. Supp.2d 1254, 1260

(S.D. Ala., 2006); see also, <u>Gardner v. United States</u>, 2009 WL 2425717 at *8 (D. N.M., July 8, 2009).

In addition to the specific charge, that the IRS violated Title 26 U.S.C. §6304(b), the Complaint contains myriad factual allegations which, reading the pleadings liberally -- as we must -- we examine individually, in our review of whether Behr states a claim under Section 7433. In the interest of clarity, we begin our analysis of the sufficiency of Behr's pleadings with those factual allegations.

      1.   <u>Statute of Limitations</u>. The Government argues that the Court lacks subject matter jurisdiction over several of Behr's claims, because the statute of limitations has expired.[11] Sections 7432 and 7433 are limited waivers of the Federal Government's sovereign immunity, and both include a two (2) year limitations period. See, <u>Title 26, U.S.C. §§7432(d)(3) and 7433(d)(3)</u>. The Court of Appeals for the Eighth Circuit has not ruled on the jurisdictional nature of the limitations in those provisions and, while there is some disagreement among the Courts, the weight of authority discloses that the time limitations are a jurisdictional

---

[11]In his Response, Behr agrees that the period of time from 1992 to 2001 is no longer relevant but, it appears that his agreement is based on a belief that the same argument excuses any outstanding tax liabilities from those years. As the amount of Behr's tax liabilities are not at issue in this litigation, we do not take Behr to concede to the dismissal of his claims as to the time period from 1992 to 2001.

prerequisite. See, <u>Anderson v. United States</u>, 220 Fed.Appx. 479, 481 (9th Cir., January 26, 2007)("A statute of limitations requiring that a plaintiff bring suit against the government within a certain time limit is a term limiting the court's jurisdiction."), cert. denied, --- U.S. ---, 128 S.Ct. 944 (2008); <u>Gandy Nursery, Inc. v. United States</u>, 318 F.3d 631, 637 (5th Cir. 2003)(same); <u>Shipley v. I.R.S.</u>, 2006 WL 497720 at *1 (10th Cir., March 2, 2006)(same); <u>United States v. Dalm</u>, 494 U.S. 596, 608 (1990)(statute of limitations is a term of consent for waiver); cf., <u>Ahrens v. United States</u>, 531 F. Supp.2d 74, 75 n. 1 (D. D.C. 2008)(based on the Supreme Court's recent guidance in <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500 (2006), Courts should not read jurisdictional requirement into a statute); <u>Chocallo v. IRS</u>, 2007 WL 2071880 at *5 n. 2 (E.D. Pa., July 16, 2007)(same); <u>Ramos v. United States</u>, 2002 WL 31466751 at *2 (N.D. Cal., November 1, 2002), citing <u>Irwin v. Department of Veterans Affairs</u>, 498 U.S. 89 (1990); <u>United States v. Marsh</u>, 89 F. Supp.2d 1171, 1173 (D. Hawai'i 2000)(citing same).

In the context of suits for a tax refund, pursuant to Title 26 U.S.C. §7422(a), the limitations period that is imposed by Title 26 U.S.C. §6532 is jurisdictional. See, <u>In re Pransky</u>, 318 F.3d 536, 544 (3rd Cir. 2003); <u>Gavigan v. Comm'r of IRS</u>, 2007 WL 1238651 at *6 (D. Conn., April 27, 2007). Further, our Court of Appeals has held, in

somewhat analogous circumstances, that the statute of limitations for a claim raised under the Federal Tort Claims Act, Title 28 U.S.C. §§2671, et. seq., is jurisdictional, as a term of consent in the United States' waiver of its sovereign immunity. See, T.L. ex rel. Ingram v. United States, 443 F.3d 956, 961 (8th Cir. 2006)(finding that Irwin v. Department of Veterans Affairs, supra, was clarified by United States v. Brockamp, 519 U.S. 347 (1997)); see also, Ryan v. United States, 534 F.3d 828, 831 (8th Cir. 2008).

Here, we need not definitively determine whether the statute of limitations is jurisdictional or not, as it is appropriate to examine whether a claim is plainly time-barred on its face when considering a Motion to Dismiss. See, Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir. 2004)("Generally, a motion to dismiss may be granted when a claim is barred under a statute of limitations."); Wycoff v. Menke, 773 F.2d 983, 984-85 (8th Cir. 1985), cert. denied, 475 U.S. 1028 (1986); Hayhurst v. Bradley, 980 F.2d 734 at *1 (8th Cir. 1992).

A cause of action under Section 7433 accrues when a taxpayer "has had a reasonable opportunity to discover all essential elements of a possible cause of action." See, Title 26 C.F.R. §301.7433-1(g)(2); see also, Dziura v. United States, 168 F.3d 581, 583 (1st Cir. 1999); Long v. United States, 604 F. Supp.2d 119, 121 (D.

D.C. 2009); <u>Gessert v. United States</u>, 2007 WL 1029077 at *2 (E.D. Wis., March 30, 2007); <u>Delvecchio v. Smith</u>, 558 F. Supp.2d 1243, 1250 (S.D. Fla., 2008); <u>Mathis v. United States</u>, supra at *4.

Upon an indulgent reading of his Complaint, Behr alleges that IRS Agent Barker threatened civil and criminal action against Behr in a letter, which was dated May 30, 1996, and followed through on his threat by seizing Behr's Indiana property in 1997, and commencing and completing a criminal investigation in 2000.  See, <u>Complaint</u>, supra at ¶¶29, 35.  Behr alleges that the IRS improperly seized his Indiana property in 1997, <u>id</u>. at ¶29, and improperly under-valued the property in its 1997 appraisal.  <u>Id</u>. at ¶30.  He also alleges that, "from 2002 to 2005 the IRS issued intentional, erroneous and reckless liens far in excess of plaintiff's tax liability," <u>id</u>. at ¶48, and that, in April of 2006, IRS agents came to his home to collect an alleged $401,388.22 tax liability, and cut him off as he tried to explain himself.  <u>Id</u>. at ¶54-55.  Behr filed his Complaint on March 3, 2009.  See, <u>Docket No. 1</u>.  As a consequence, any claim based upon those alleged actions is plainly time-barred on the face of the Complaint, and there is nothing that would demonstrate that the statute of limitations had tolled.  See, <u>Hayhurst v. Bradley</u>, supra at *1.  Accordingly, we recommend dismissal as to that claim.

Additionally, Behr alleges that the IRS levied an illegal 61.78 percent of his Social Security benefits, for several months in 2004, in excess of the fifteen (15) percent statutory maximum, see, <u>Complaint</u>, supra at ¶64; <u>Title 26 U.S.C. §6331(h)(1)</u>, then reduced the levy to the maximum, and subsequently, discontinued it altogether in 2005. See, <u>Complaint</u>, supra at ¶64. Behr alleges that, in 2007, the IRS reinstated the levy without explanation of how it made the decisions about those levies, but he alleges no other improprieties. <u>Id.</u> Behr's claims that are related to the 2004 and 2005 levies are also clearly time-barred, as his Complaint states that he notified the Government of the error in 2004. <u>Id.</u>

As to the levy in 2007, which is not necessarily time-barred, Behr has failed to allege a statutory violation, which could raise a claim under Section 7433, and our independent review reveals none. Indeed, when a taxpayer has not made full payment of his tax liabilities, the Government may collect the tax "by levy upon all property and rights to property * * * belonging to such person," except that which is exempt under Section 6334 -- an exemption that does not apply here. See, <u>Title 26 U.S.C. §§6331(a), and 6334</u>.[12] Accordingly, we recommend this claim also be dismissed.

---

[12]Title 26 U.S.C. §6331(d) requires the Government to provide notice of the Secretary's intention to place a levy upon the salary or wages of a taxpayer, no less

(continued...)

Behr further alleges that the IRS filed a false proof of claim, for far more than he actually owed, in his 2006 bankruptcy action, thereby preventing his bankruptcy from being confirmed, and apparently, with the purpose of defeating his bankruptcy, so as to allow the tax sale of his Minnesota property, and to harass, oppress, and abuse him, in violation of Section 6304. See, <u>Complaint</u>, supra at ¶¶50-51. The claim is also time-barred, since it is clear, from the Complaint, that Behr believed that the Proof of Claim was erroneous when it was filed in 2006. <u>Id</u>. at ¶50. Accordingly, we recommend dismissal of that claim.

Behr also appears to allege that the IRS improperly placed a lien on his Minnesota property, in order to collect taxes in excess of what he actually owed. <u>Id</u>. at ¶43-48. Critically, as the Government points out in its brief, and as is exemplified by the numerous tables and charts that Behr has submitted, Behr does not allege that he had no unpaid tax liability during that time period.

---

[12](...continued)
than thirty (30) days before the levy, and requires that notice to include a brief statement which sets forth the statutory provisions relating to the levy and sale of property, the procedures applicable to the levy and sale of property, the administrative appeals available, the alternatives by which a taxpayer may prevent a levy, the statutes relating to redemption of property and release of liens, and the procedures applicable to the redemption of property and release of liens. See, <u>Title 26 U.S.C. §6331(d)(1)-(4)</u>. Behr's allegations cannot reasonably be read to state a violation of any portion of that provision.

While a failure to release a lien falls under Section 7432, the Government's illegal filing of a notice of lien can also constitute a claim under Section 7433, as an illegal collection action.  See, Miller v. United States, 763 F. Supp. 1534, 1543 (N.D. Cal. 1991)("[T]he notice and demand for payment constitute a collection action, as does the filing of a notice of tax lien."); Gandy Nursery, Inc. v. United States, supra at 638 [collecting cases]; Miller v. Sherrill, 146 F.3d 1051, 1051 (8th Cir. 1998); Greer v. United States, 2007 WL 1520927 at *6 (E.D. Ky., May 23, 2007)(claim regarding the IRS's filing of a tax lien is properly brought under Section 7433, despite its basis in an assessment disagreement); Bryant v. United States, 527 F. Supp.2d 137, 141 (D. D.C. 2007).  Behr does not specify what statute he raises his claim under, and it is best construed as a Section 7433 action.

For this claim, the statutory period began to run, at the very latest, when Behr learned of the lien.  See, Long v. United States, supra at 121-22; Delvecchio v. Smith, supra at 1250; see also, Eastman v. United States, 2008 WL 899252 at *4 (W.D. Ark., March 31, 2008)(statute of limitations began when the lien notice was filed).  Behr alleges that he filed his 2006 bankruptcy action in order "to avoid financial ruin from the intentional, erroneous, and reckless collection of taxes by the IRS which had seized plaintiff's Minnesota real estate."  See, Complaint, supra at ¶50.  Plainly, Behr

had notice of the lien by at least 2006, which was more than two (2) years before he filed his Complaint, and therefore, his related claim is time-barred.

Further, Behr has failed to allege a violation of a statute in relation to the lien because, based upon Behr's Complaint and attached Exhibits, the IRS had the authority to hold the lien. "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." Title 26 U.S.C. §6321. Such a lien arises on the date of assessment, if the assessment is not paid, and lasts "until the liability for the amount so assessed * * * is satisfied or becomes unenforceable by reason of lapse of time." Title 26 U.S.C. §6322. Pursuant to Section 6502(a), the IRS may only collect a tax within ten (10) years of the assessment date, absent a few exceptions, which do not apply here, see, Title 26 U.S.C. §6502(a)(1), and therefore, a tax lien expires ten (10) years from the date of assessment. See, Griswold v. United States, 59 F.3d 1571, 1579 n. 17 (11th Cir. 1995); United States v. Berk, 374 B.R. 385, 392 (D. Mass. 2007).

According to the tables that Behr included with his Complaint, at a minimum, he owed the IRS $77,827.36 in 2006, for the time period beginning in 2002. See, <u>Exh. 10</u>. Accordingly, based upon Behr's allegations, the lien properly arose on Behr's property, for taxes owed, and had not expired when the IRS took action to perfect it. Even if Behr's claim were not barred by the statute of limitations, his claim would, nevertheless, fail.

In addition, Behr alleges that the IRS caused to disappear some $23,557.05 of his 2002 payment towards his tax liabilities. See, <u>Complaint</u>, supra at ¶44. Behr properly raises that claim under Section 7433, as the alleged mishandling of collected funds is a "collections action," rather than an assessment error. See, <u>Ludtke v. United States</u>, 84 F. Supp.2d 294, 301 (D. Conn. 1999); <u>Gessert v. United States</u>, 2007 WL 1029077 at *2 (E.D. Wis., March 30, 2007)(denying Motion to Dismiss a Section 7433 claim, where taxpayer alleged that a voluntary payment, made as a result of IRS collection efforts, had been wrongfully misapplied); cf., <u>Stevens v. United States</u>, 1991 WL 30101 at *1 (N.D. Ill., March 4, 1991)(misapplication of payment upon sale of levied property is not a collections action).

Behr does not allege when he learned of this purported misappropriation, but the allegations in his Complaint demonstrate that he had a reasonable opportunity to

discover all of the essential elements of the possible cause of action outside of the statutory period. Specifically, from the IRS Transcript, which Behr filed with his Complaint, Behr made the payments on September 23, 2002, and he does not allege that the IRS concealed the application of that payment. See, <u>Transcript</u>. Behr then filed for bankruptcy protection in 2006, more than two (2) years before the instant suit was filed. See, <u>Complaint</u>, supra at ¶50. Plainly, Behr had the opportunity to know that the IRS had not credited him with the $23,557.05 in 2006 -- at the latest -- by his knowledge of the amount he had paid, and the amount the IRS claimed in its Proof of Claim. See, <u>Kovacs v. United States</u>, 415 B.R. 699, 703 (E.D. Wis. 2009) (the plaintiff had a reasonable opportunity to discover all essential elements of her claim when she knew, or had reason to know, that an order had been issued which discharged certain tax liabilities, that the IRS knew of the discharge order, and that the IRS continued to seek payment for the discharged tax liabilities); see also, <u>Valladares v. I.R.S.</u>, 2001 WL 670629 at *6 (E.D. Cal., May 2, 2001)(taxpayer who was verbally informed of levy could have discovered the cause of action, and so the claim challenging the levy was time-barred); <u>Johnson v. United States</u>, 188 F.R.D. 692, 702 (N.D. Ga. 1999)("Given the extensive litigation and discovery that had been conducted between Plaintiffs and the IRS prior to [the date the Plaintiffs' alleged

cause of action accrued], the court finds that Plaintiffs had a reasonable opportunity

to discover the elements of their §7433 action."), Stjernholm v. Peterson, 85 F.3d 641

at *2 (10th Cir., May 9, 1996).  Finding no viable action in these respects, we turn to

the sale of Behr's Minnesota property in 2007.

2.      The 2007 Sale of the Minnesota Property.  The Government

concedes, as it must, that Behr's claim, which relates to the tax sale of his Minnesota

property, is not time-barred.  Instead, the Government argues that the Complaint fails

to state a claim, because Behr acknowledges that he owed the IRS between

$58,851.00, and $130,400.40, in 2008,[13] and therefore, the sale was a legitimate action

by the IRS to collect on money owed and, in any case, the claim is fundamentally a

disagreement about an assessment, which is improperly raised under Section 7433.

See, Government's Reply to Behr's Opposition, Docket No. 15, at pp. 2-3.

In Behr's Complaint, he alleges several separate improprieties with respect to

the 2007 tax sale: 1) that completing the sale was improper; 2) that the IRS

intentionally under-valued the property; and 3) that the IRS improperly sold the

_____

[13]This is an accurate report of Behr's statement in ¶57 of his Complaint, and his
allegations as to the amount erroneously applied to the years prior to 2002.  However,
the  IRS sold the Minnesota property on March 14, 2007 -- not 2008 -- at which time,
Behr alleges in his tables, that he owed, at a minimum, $88,632.11.  See, Exh. 10.

property for less than its total value.  None of those allegations raise a claim under Section 7433.

As we have noted, Section 7433 allows a taxpayer to sue the United States when an employee of the IRS recklessly or intentionally disregards a statute or regulation.  See, <u>Hynard v. I.R.S.</u>, 233 F. Supp.2d 502, 510 (S.D. N.Y. 2002).  The crux of Behr's claim is that the tax sale was unreasonable, because he would have been able to pay the debt if the IRS had allowed him to obtain a mortgage, by releasing its lien.[14]  While Behr characterizes that conduct as "reckless," which is a conclusion that is contradicted by the facts alleged, and that the Court need not accept. See, <u>Scott v. United States</u>, 608 F. Supp.2d 73, 81 (D. D.C. 2009).

Behr does not directly address whether the Minnesota property was sold by the IRS after levy and seizure, or by foreclosure, pursuant to a civil action in the District Court.  See, <u>Stead v. United States</u>, 419 F.3d 944, 946 (9th Cir. 2005)("When a taxpayer fails to pay his or her federal individual income tax, a lien in favor of the government arises * * * [and] the government may perfect this lien through one of two procedures: an administrative tax levy * * * or a lien-foreclosure suit[.]").  As there

---

[14]Since the improper failure to release a lien implicates Section 7432, and not 7433, we later address that argument.

is no evidence of an Order of Foreclosure, it appears that the Minnesota property was levied and sold. In either case, Behr has failed to allege a violation of a statute which could support a claim under Section 7433.

Section 6331(b) provides that, "[i]n any case in which the [IRS] may levy upon property or rights to property, [it] may seize and sell such property or rights to property (whether real or personal, tangible or intangible)." Title 26 U.S.C. §6331(b); see also, Title 26 C.F.R. §301.6331-1(a)(1). The IRS has the authority to levy "upon any property, or rights to property, whether real or personal, tangible or intangible, belonging to the taxpayer," and may also "levy upon property with respect to which there is a lien provided by section 6321 * * * for the payment of the tax." Title 26 C.F.R. §301.6331-1(a)(1).

Here, as we have noted, the IRS possessed a lien on Behr's Minnesota property, which properly arose under Section 6321, due to his outstanding tax liability. Therefore, the IRS had the statutory authority to levy upon the Minnesota property, and to sell the property in order to satisfy that tax liability. See, EC Term of Years Trust v. United States, 550 U.S. 429, 430-31 (2007)("'A federal tax lien * * * is not self executing' and the IRS must take '[a]ffirmative action * * * to enforce collection of the unpaid taxes'" * * * [and] [o]ne of its 'principal tools' * * * is a levy, which is

a 'legally sanctioned seizure and sale of property.'"), quoting <u>United States v.</u> <u>National Bank of Commerce</u>, 472 U.S. 713, 720 (1985); see also, <u>Celauro v. United</u> <u>States IRS</u>, 411 F. Supp.2d 257, 264-65 (E.D. N.Y. 2006)("[The IRS] is empowered to collect the assessed tax by levy and sale of all property * * * on which there is a lien for payment of the tax."); see also, <u>Byrd v. United States</u>, 1996 WL 196705 at *2 (W.D. Ark., February 22, 1996)(noting that "levying on bank accounts is not reckless or intentional disregard of the Code when the taxpayer is delinquent in paying a standing assessment"). Accordingly, Behr has not alleged any facts which would show that the IRS sold the Minnesota property in contravention of the applicable statutes or regulations, and he has failed to state a claim under Section 7433 arising from the fact of that sale.

Further, Behr's claims regarding the financial aspects of the sale must also fail. Behr alleges that the Minnesota property was improperly appraised at ninety percent (90%) of the appraisal that he had obtained from a "qualified (licensed) appraiser," that the IRS never supplied proof to him of the qualifications of its appraiser, that the IRS improperly set the minimum bid at fifty-four (54) percent of the alleged fair market value, and improperly sold the property for $308,000.00 which, Behr alleges, is seventy-five (75) percent of the alleged fair market value. Behr also implies that

IRS appraiser, Steve Hopkins, improperly completed his appraisal by asking Behr's painter how much the property was worth. See, Complaint, supra at ¶52.

Further, Behr alleges that the IRS's practice of under-appraising properties leads to "fraudulent" sales, and is intended to coerce taxpayers "to capitulate to IRS demands without regard to their validity." See, Complaint, at ¶66. The Government argues that the claim must fail, as a matter of law, because a ten (10) percent difference in appraisal is not unreasonable, nor is a sale at seventy-five (75) percent, and because the IRS is allowed to use aggressive collection measures.

Section 6335, and the corresponding regulations, in addition to authorizing the IRS to levy for deficiencies, govern the procedures involved in the IRS's collection of debts by means of a levy and sale. See, Title 26 U.S.C. §6335; Title 26 C.F.R. §301.6335-1. The IRS is required to provide notice to the taxpayer, in writing, of the seizure and of the sale; to provide the public notice; to set a minimum sales price; and to sell the property to the highest bidder at or above the minimum sale price, or to release the property to the owner if it is not sold. See, Title 26 U.S.C. §6335(a)-(b), (e)(1)(A)-(B), and (e)(1)(D).

In addition, Section 6331(j) provides that the IRS may not levy upon a property "until a thorough investigation of the status of such property has been completed."

Title 26 U.S.C. §6331(j)(1). The investigation must include verification of the taxpayer's liability; a determination that the equity in the property is sufficient to yield net proceeds from the sale, so as to apply to the tax liability; a thorough consideration of alternative collection methods; and an analysis of whether the amount of expenses, in order to levy and sell the property, would exceed the fair market value of the property. See, Title 26 U.S.C. §§6331(j)(2) and 6331(f); Title 26 C.F.R. §301.6331-2(b).

Having completed an independent review of the applicable statutes and regulations, we find no required procedures by which the IRS must determine the fair market value of a property.[15] In fact, the IRS is not required by statute to conform to any particular appraisal practice, and it has promulgated its own manuals for appraisals. See, e.g., Schwartz v. CIR, 2009 WL 3236050 at *3 (3rd Cir., October 9, 2009), citing Whitehouse Hotel Ltd. P'ship v. Comm'r, 2008 WL 4757336 at *10 (U.S. Tax Ct., October 30, 2008)("Petitioners have not cited any authority, nor do we know of any, for the proposition that an appraiser's compliance with [the Uniform

---

[15]We note that Title 26 C.F.R. §301.6325-1(b)(1)(i) describes "fair market value" as "that amount which one ready and willing but not compelled to buy would pay to another ready and willing but not compelled to sell the property," but does not mandate procedures to determine that amount.

Standards of Professional Appraisal Practice] is the sole determining factor as to whether an appraiser's valuation report is reliable."); see also, <u>In re Tax Indebtedness of Blake</u>, 2008 WL 5244326 at *3 (E.D. Mich., December 16, 2008)(discussing the Internal Revenue Service Manual requirements for determining minimum bids).  A violation of an internal IRS policy cannot form the basis for a claim under Section 7433.  See, <u>Sachs v. United States</u>, 59 Fed.Appx. 116, 118 (6th Cir., February 21, 2003), citing <u>Shwarz v. United States</u>, 234 F.3d 428, 434 (9th Cir. 2000); <u>Gonzalves v. IRS</u>, 975 F.2d 13, 16 (1st Cir. 1992).[16]

---

[16]If the IRS did not levy on the property, but rather foreclosed its lien, then Title 26 U.S.C. §7403, and Title 26 C.F.R. §301.7403-1, would govern.  Those provisions require the IRS to file a civil action in order to enforce the lien, wherein the District Court "adjudicate[s] all matters involved therein and finally determine[s] the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property, by the proper officer of the court[.]"  See, <u>Title 26 U.S.C. §§7403(a) and (c)</u>.  Behr does not allege a violation of those provisions, so as to support his claim under Section 7433.  Additionally, to collaterally attack a sale of property under Court Order in proceedings to foreclose tax liens, the taxpayer must show that "the sales price was so inadequate as to amount to fraud."  See, <u>Kabakjian v. United States</u>, 92 F. Supp.2d 435, 440, n. 9 (E.D. Pa., 2000), aff'd, 267 F.3d 208 (3rd Cir. 2001), quoting <u>United States v. Howard</u>, 296 F. Supp. 264, 265 (D. Or. 1968).  Here, Behr has not alleged facts which would rise to that level.  See, <u>Kabakjian v. United States</u>, supra at 441 (sale for forty-seven and one-half (47.5) percent of the taxpayer's unsupported estimate of market value is not a shocking disparity); <u>First National Bank of Jefferson Parish v. M/V Lightning Power</u>, 776 F.2d 1258, 1259, 1261 (5th Cir. 1985)(sale price of one (1) percent of market value is grossly disproportionate in a judicial sale).

To the extent that Behr raises his claims, based on the bare fact that the IRS's appraisal and minimum bid, and eventual tax sale, were significantly lower than the value of his appraisal, at seventy-five (75) percent, the argument fails because the IRS is only required to sell the property at or above the minimum bid price. See, Title 26 U.S.C. §6335(e)(1)(B); see also, Kabakjian v. United States, 92 F. Supp.2d 435, 440 (E.D. Pa., 2000), aff'd 267 F.3d 208 (3rd Cir. 2001)("It is clear that the forced sale value of property will almost invariably be significantly less than the ordinary fair market value"), citing BFP v. Resolution Trust Corp., 511 U.S. 531, 537-38 (1994). Accordingly, we find no actionable claim in this respect.[17]

---

[17]Behr also appears to assert that the IRS sold his Minnesota property for some reason other than the collection of taxes. See, Complaint, supra at ¶57. Behr seems to base that allegation on his evaluation of the wisdom of the sale, and on his calculation of the taxes owed which, he alleges, shows that he was entitled to a payment from the IRS upon the sale. Id. His allegations in this respect are bare speculation for, as we have noted in the text of this Report and Recommendation, Behr consistently alleges that he owed the IRS for unpaid taxes, and Behr's speculative assertion that the IRS did not sell the property in order to collect those unpaid taxes cannot sustain a claim under Section 7433 for improper collection actions. See, United States v. Kaigler, 109 F. Supp.2d 736, 738-39 (N.D. Ohio 2000); Byrd v. United States, 1996 WL 196705 at *4 (W.D. Ark., February 22, 1996); Bohall v. United States, 602 F. Supp.2d 187, 189 (D. D.C. 2009); cf., Gessert v. United States, 2007 WL 1029077 at *3 (E.D. Wis., March 30, 2007)(claim under Section 7433 was not futile, where the plaintiff had specified which levies were challenged, and had alleged that the levies were issued pretextually and in bad faith).

3.    The Alleged Misapplication of Tax Sale Proceeds.  Behr also alleges that the IRS improperly applied the funds, that were collected from the 2007 tax sale, to tax liabilities that were already paid, for the period from 1997 through 2001, in violation of Section 7433.  The Government argues that the claim is actually a claim challenging the assessment of Behr's tax liability, which can only be properly raised under Section 7422.  As we have explained, mishandling money that was received from collection efforts is a "collections action," for purposes of Section 7433 liability.  See, <u>Ludtke v. United States</u>, supra at 301; <u>Gessert v. United States</u>, 2007 WL 1029077  at *2 (E.D. Wis., March 30, 2007).

However, this particular claim is fundamentally different from Behr's earlier claim -- that the IRS caused the disappearance of part of his 2002 payment -- which was a collections action, and properly challenged under Section 7433.  Rather, this claim is based entirely upon Behr's contention that he had fully paid all tax liabilities for the years up to 2001, and therefore, that he did not owe any taxes for that period. This is simply another way of saying that the IRS erroneously assessed his tax liability.[18]

---

[18]In support of his claim, Behr alleges that, as evidenced by the payment he made in 2002 in order to clear the title to his Indiana property, he was current on all
(continued...)

tax liabilities for the years prior to 2002, and therefore, the IRS applied his 2002 payment to years that had already been paid in full.  This is a conclusion we need not accept as true.  See, <u>Scott v. United States</u>, 608 F. Supp.2d 73, 81 (D. D.C. 2009).  In fact, under our reading of the applicable statutes, the Indiana payment does not hold the significance Behr attributes to it.  The applicable regulations provide, in relevant part, as follows:

> The appropriate [IRS] official may, in his discretion, issue a certificate of discharge of any part of the property subject to a Federal tax lien imposed * * * if such part of the property is sold, and pursuant to a written agreement with the appropriate official, the proceeds of the sale are held, as a fund subject to the Federal tax liens and claims of the United States, **in the same manner and with the same priority as the Federal tax liens or claims had with respect to the discharged property**.

<u>Title 26 C.F.R. §301.6325-1(b)(3)</u>[emphasis added]; see also, <u>Title 26 U.S.C. §6325(b)</u>(other circumstances where the IRS may issue a discharge of property); <u>Title 26 C.F.R. §301.6325-1(b)</u>(same).

The most natural explanation for the amount of the 2002 payment, for property sold for $800,000, is that the property was encumbered by a lien, mortgage, or other obligation which had priority over the United States' lien.  Behr has not alleged that the property was unencumbered, nor how much equity he held in the property.  See, <u>In Re Johnson</u>, 386 B.R. 171, 180 (Bkrtcy. W.D. Pa. 2008), aff'd 415 B.R. 159 (2009)(Section 6325(b)(2)(B) "provides the mechanism for removal of an IRS lien from an affected property simply upon a showing by the taxpayer that no equity exists in the affected property * * * [Section 6325] and accompanying regulations contemplate that the alleged 'single lien' created by <u>26 U.S.C. §6321</u> can, in effect, be treated as separate liens on separate items of property and discharged *as to those items of property which are valueless to the United States because they are subject to other lien(s) with priority*.")[emphasis added].  With this context, we could not accept

In order to prove the claim, however, Behr would have to establish that the Government erred in its assessment, if he is to show that he was current as of 2001.[19] This is precisely the type of bootstrapping that a taxpayer plaintiff is not permitted to invoke if he or she is to state a claim under Section 7433. See, Shaw v. United States, supra at 184 ("[T]o prove a claim for improper assessment, a taxpayer must demonstrate why no taxes are owed, but to prove a claim for improper collection practices, the taxpayer must demonstrate that the IRS did not follow the prescribed methods of acquiring assets."); Noske v. United States, 998 F.2d 1018 at *2 (8th Cir. 1993)("The district court correctly dismissed [the claim] insofar as it was grounded on the legality of the initial assessment of * * * penalties[.]"); Marsound v. United

_____

[18](...continued)
Behr's conclusion that his tax liability was re-set in 2002, even if the assessment was an issue before us.

[19]We do not ignore Behr's argument, that he and the IRS do not disagree on the amount owed. See, Behr's Reply to IRS's Reply, Docket No. 18, at p.1. Behr appears to base that argument on his contention that the IRS, in a number of instances, has implicitly agreed with his own assessment. We cannot find the argument to be persuasive, however, as it contradicts Behr's own allegation, that his IRS "account" is "erroneous," see, Complaint, supra at ¶69, as well as his self-created Exhibits which, in fact, categorize the data as follows: "IRS Claims," "IRS Taxes Only Claims," and "Behr Taxes Owed." See, Complaint, Exhibit No. 4, at p. 6 of 16. Moreover, common sense dictates that, if Behr and the IRS agreed about the amount that he owes, and therefore, the amount that should be collected and applied, then this dispute would not now be before the Court.

States, 591 F. Supp.2d 41, 47 n. 2 (D. D.C. 2008);("[M]uch of plaintiff's amended complaint is based on the alleged failure of the IRS to make a lawful assessment of taxes * * * [but because] section 7433 does not provide a cause of action for wrongful tax assessment * * * the portions of the amended complaint challenging wrongful or missing assessments * * * are dismissed[.]"); Morse v. CIR, 1996 WL 90533 at *4 (E.D. N.Y., February 26, 1996)("The substance of plaintiffs' complaint is that the IRS's determination of tax liability, not the collection procedure, was flawed."); Gardner v. United States, supra at *8 ("[The plaintiff] cannot 'back door' another attempt at challenging his assessment by attempting to bring a negligence action under §7433."); see also, Gonsalves v. IRS, 975 F.2d 13, 16 (1st Cir. 1992).

As a consequence, since Behr's claim rests on a disagreement with the IRS about the assessment for the years prior to 2002 -- based upon the IRS's 1997 proof of claim, alleged de facto admissions, and Behr's payment to clear the title of his Indiana property -- we recommend that Behr's claims concerning the alleged misapplication of funds, which were collected in 2007, and applied to pre-2002 tax debts, be dismissed. See, McIver v. United States, 650 F. Supp.2d 587, 593 (N.D. Tex. 2009).

4. <u>The Alleged Violations of Title 26 U.S.C. §6304</u>. Behr asserts that the IRS's conduct, as it impacted upon him, has been harassing, oppressive, and abusive, in violation of Title 26 U.S.C. Section 6304. Considered individually or together, Behr's allegations regarding the IRS's conduct, which is not too remote in time to support a claim -- namely, filing the lien on his Minnesota property, appraising the property at ninety (90) percent of its value, and selling the property, for fifty-four (54) percent of its value -- do not raise a colorable claim under Section 6304.

Section 6304 provides that the IRS "may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any unpaid tax," and gives a nonexhaustive list of examples: threats of violence or criminal acts, obscene or profane language, causing a telephone to ring continuously, and placing phone calls without disclosure of the caller's identity. See, <u>Title 26 U.S.C. §6304(b)</u>. While few Courts have considered the application of Section 6304, there are cases that discuss the provisions of Fair Debt Collection Practices Act ("FDCPA"), which contains nearly the exact same language as Section 6304(b), and which Section 6304(b) references. See, e.g., <u>Title 15 U.S.C. §1692d</u> (forbidding private debt collectors from "any conduct the natural consequence of

which is to harass, oppress, or abuse any person in connection with the collection of a debt").

As we have detailed, based upon the allegations in Behr's Complaint, the IRS acted within its authority when it undertook to collect assessed tax liabilities from Behr. We do not doubt that lawful conduct -- such as the placing of a phone call -- may, in some circumstances, serve to harass, oppress, or abuse, but the conduct Behr alleges, here, does not approach such a distasteful state of behavior. Compare, <u>Diaz v. D.L. Recovery Corp.</u>, 486 F. Supp.2d 474, 477 (E.D. Pa. 2007)(denying Motion to Dismiss a claimed violation of the FDCPA, where the Complaint alleged that the debt collector threatened to "repossess all of [the plaintiff's] household belongings and even her car" within hours, unless she paid her boyfriend's debt); <u>Fox v. Citicorp Credit Services, Inc.</u>, 15 F.3d 1507, 1516 (9th Cir. 1994)(reversing Summary Judgment in favor of the creditors because "[t]hreatening and intimidating calls to a consumer at an inconvenient time or place could rationally support a jury finding of harassing conduct."); and, <u>Chiverton v. Federal Financial Group, Inc.</u>, 999 F. Supp.2d 96, 101 (D. Conn. 2005)(collection agent violated Section 1692d by calling the plaintiff a "liar," and repeatedly calling the plaintiff after the plaintiff had hung up); with, <u>Harvey v. Great Seneca Financial Corp.</u>, 453 F.3d 324, 330 (6th Cir. 2006) ("[T]he

examples of oppressive conduct listed in §1692d concern tactics intended to embarrass, upset, or frighten a debtor * * * [and] they are likely to cause the 'suffering and anguish' which occur when a debt collector attempts to collect money which the debtor, through no fault of his own, does not have * * * [and] [t]hese tactics are not comparable to the single filing of a debt-collection lawsuit."), quoting Montgomery v. Huntington Bank, 346 F.3d 693, 700 (6th Cir. 2003); Pearce v. Rapid Check Collection, Inc., 738 F. Supp. 334, 338-39 (D. S.D. 1990)(a letter threatening actions, "which legally could be taken, and in fact were taken," provided "absolutely no basis" for the Court to find a violation of Section 1692d); Watkins v. Peterson Enterprises, Inc., 57 F. Supp.2d 1102, 1109 (E.D. Wash. 1999)(finding the service of multiple writs of garnishment to be "a far cry from" the conduct with which Congress was concerned in promulgating Section 1692d); and, Jeter v. Credit Bureau, Inc., 760 F.2d 1168, 1180 (11th Cir. 1985)(a creditor letter stating its intention to file a lawsuit, which could cause the debtor "embarrassment, inconvenience, and further expense," did not constitute harassment).[20]

_____

[20]We accept that the commencement of a garnishment proceeding, after the debtor has paid a Judgment, and disputed the amount that is claimed to be due, has been found to be conduct which may "harass, oppress and abuse," in violation of Title 15 U.S.C. §1692d.  See, Taylor v. Heath W. Williams, LLC, 510 F. Supp.2d 1206,

(continued...)

- 40 -

Moreover, at least one District Court has determined that the history of Section 6304 demonstrates Congress' intent that the provision regulates the manner in which employees of the IRS communicate with taxpayers. See, Hodgson v. United States, 2007 WL 3274183 at *2 (E.D.Cal., November 5, 2007)("The congressional intent of §6304 was to address the concerns regarding abusing or harassing contact with taxpayers"), citing S.Rep. No. 105-174, at 93 (1998). Here, as to those communications which are not plainly too remote to support a claim, Behr alleges that the IRS has not responded to many of his letters over the years, see, Behr's Response, supra at pp. 9-10; that an IRS agent informed him that the non-public IRS manuals, and not the "official IRS publications," control an agent's behavior, which Behr alleges "constitutes a lack of accountability, and contributes to taxpayers' disdain for the agency," see, Complaint, supra at ¶65; and that he has submitted significant documentation to the IRS that his "account is obviously erroneous," and yet the IRS has never "acknowledge[d] even the possibility that plaintiff's account could be erroneous," see, Complaint, supra at ¶69.

---

[20](...continued)
1216-17 (N.D. Ga. 2007). In the context of tax collections, however, a claim disputing the amount owed may only be raised in an action for a return, and so we do not find such cases to be apposite to the dispute before us.

For the reasons stated above, those allegations do not state a cognizable violation of Section 6304. See also, <u>Gessert v. United States,</u> 627 F. Supp.2d 942, 950 (E.D. Wis. 2009)(IRS agent's "aggressive" and "abrupt" conduct was not harassing or oppressive, where the plaintiff did not allege threats of violence, criminal acts, or continuous phone calls). Accordingly, we recommend the dismissal of the claims raised under Section 6304.

Most importantly, a careful reading of the Complaint, and its attached Exhibits, reveals that the core of Behr's allegation that Section 6304 has been violated rests on his contention that the IRS's collection actions served to harass, oppress, and abuse him, because they were based on an incorrect assessment of his tax liabilities. See, e.g., <u>Complaint</u>, supra at ¶42 ("[P]enalties and interest are incapable of explaining even a very small part of the difference in the positions of plaintiff and the IRS from 1992 through 2001."); see also, <u>Behr's Response</u>, <u>Docket No. 12</u>, at p. 5 ("[D]efendant filed erroneous liens in the attempt to collect far in excess of what plaintiff owed[.]").

The vast weight of authority, however, demonstrates that, where the IRS's collection activities are procedurally correct -- even if based on an erroneous assessment -- the IRS does not violate a statute, which could raise a claim under Section 7433. See, <u>Bloom v. United States</u>, 220 F. Supp.2d 382, 391-393 (M.D. Pa.

1999)(examining the split in the District Courts); <u>Byrd v. United States</u>, supra at *2 ("Issuance of procedurally correct levies cannot be a violation of §7433."); <u>Shaw v. United States</u>, supra at 184 ("[I]mproper assessment deals with the decision to impose tax liability while improper collection activities involve conduct of an agent trying to collect the taxes owed."); <u>Gunnink v. United States</u>, supra at *5 (challenge to levies was not a challenge to "collection actions," because it was based on a disagreement as to an assessment); <u>United States v. Engels</u>, 2001 WL 1078380 at *8 (N.D. Iowa, May 24, 2001)("[A]n improper assessment claim is not actionable under §7433 merely because it results in collection activity."); <u>Miller v. United States</u>, 66 F.3d 220, 222 (9th Cir. 1995), cert. denied, 517 U.S. 1103 (1996); cf., <u>Buiaz v. United States</u>, supra at 137 (allegation that lien was filed to collect taxes, which were not owed, stated a valid claim under Section 7433, where the Government did not object).  To the extent that Behr challenges the IRS's conduct, because they have attempted to collect for tax liabilities he does not believe were actually owed, the challenge is not properly brought under Section 7433, and we recommend a dismissal of those claims.

       5.    <u>The Claim Raised Pursuant to Section 6404</u>.  Behr asserted, in his argument at the Hearing, that his claims are supported by Title 26 U.S.C. Section 6404, which permits the IRS "to abate the unpaid portion of the assessment

of any tax or any liability in respect thereof," in certain circumstances. See, 26 U.S.C. §6404(a) and (c)-(f). While Behr has not cited to any specific section of that provision, and therefore, it is difficult to discern exactly what portion of his liabilities he believes the IRS should have abated, we find that the failure of citation is of no moment, since any challenge, with respect to an abatement, is not properly brought here, in an action premised upon Section 7433, for illegal collections actions.

First, to the extent that Behr may allege that the IRS should have abated his interest, pursuant to Title 26 U.S.C. Section 6404(e)(1), the Tax Court has exclusive jurisdiction to hear such claims. See, Hinck v. United States, 550 U.S. 501, 503 (2007). As a result, we do not have jurisdiction to hear a claim that is related to any assertedly erroneous failure to abate interest. Second, to the extent that Behr argues that the IRS should have abated his income tax liability, such an abatement is specifically precluded by Title 26 U.S.C. Section 6404(b), which provides that "[n]o claim for abatement may be filed with respect to income, estate, or gift tax." See, Gavigan v. Com'r I.R.S., 2007 WL 1238651 at *6 (D. Conn., April 27, 2007); see also, 26 C.F.R. 301.6404-1(b). Third, and lastly, to the extent Behr raises a challenge with respect to whether the IRS should have abated any part of his tax liability, he challenges the assessment of his tax liability -- not the collections actions of the IRS --

and so, his challenge does not raise a cognizable claim under Section 7433 on this point. See, <u>Pollinger v. United States</u>, 539 F. Supp.2d 242, 255-56 (D. D.C. 2008) (dismissing a claim based upon a claimed failure to abate interest and penalties, pursuant to Section 6404(a), raised under Section 7433, because it challenged assessment rather than collection actions); <u>Ihasz v. United States</u>, 997 F. Supp. 547, 550 (D. Vt. 1997)(dismissing action filed pursuant to Section 7433, for a failure to abate interest, because the refusal to abate interest was "part of the determination of the taxpayer's total liability"). Accordingly, Behr has failed to state a claim under Section 7433, for any violation of Section 6404, and we recommend dismissal of his claims that are premised upon Section 6404, pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure.

      B.   <u>Behr's Claims Under Title 26 U.S.C. §7432</u>. Title 26 U.S.C. §7432(a) provides a cause of action when "any officer or employee of the Internal Revenue Service knowingly, or by reason of negligence, fails to release a lien under section 6325 on property of the taxpayer." Section 6325 requires the IRS to release a lien when the "Secretary finds that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied or has become legally unenforceable." See, <u>Title 26 U.S.C. §6325(a)(1)</u>; see also, <u>Eastman v. United States</u>,

supra at *3.  The Secretary is deemed to have "found" that the liability is satisfied when the taxpayer submits a Request for Release of Lien with adequate proof of satisfaction.  See, Bloom v. United States, supra at 386-87, quoting Title 26 C.F.R. 301.7432-1(b); see also, Title 26 C.F.R. §301.6325-1(a)(4)(ii).

Behr does not allege when, exactly, the lien in question arose, but it plainly arose before his 2006 Bankruptcy Petition, which he filed to protect his Minnesota property from the tax lien.  He alleges that, in 2006, he owed the IRS somewhere between $160,183.12, see, Complaint, at ¶47, and $77,827.36.  See, Complaint, Exh. 10.  Even taking the lowest amount that Behr alleges that he owed, as calculated in his Complaint, at Exhibit 10, which subtracts attorneys fees, and does not include interest,[21] Behr contends that he owed $50,280.97 in 2005, $77,827.36 in 2006, and $88,632.11 in 2007.  See, Complaint, Exh. 10.  Therefore, Behr readily admits that he had unsatisfied tax liabilities for the years before the tax sale.  Accordingly, the IRS was under no obligation to release the lien, and did not violate Section 6325 by

---

[21]These calculations are only taken as true for the sake of argument.  Behr does not state any basis for claiming a subtraction of any fees, although he has alleged a claim for an award of costs in this action, that award would be predicated upon his ultimate showing of success.  See, Title 26 U.S.C. §7430(a); McIver v. United States, 650 F. Supp.2d 587, 591 (N.D. Tex. 2009).  To the extent that Behr intends to claim that the fees and interest as deductions, that goes to the assessment amount, which is not properly before this Court.

refusing to do so.  See, <u>Israel v. Everson</u>, 2005 WL 3277981 at *7, n. 12 (S.D. Iowa, October 14, 2005), aff'd, 210 Fed.Appx. 549 (8th Cir., December 29, 2006); <u>Action Employment Resources, Inc. v. United States</u>, 158 Fed.Appx. 67 at *1 (9th Cir., December 13, 2005), citing <u>In re Burns</u>, 974 F.2d 1064, 1065 (9th Cir. 1992); <u>McIver v. United States</u>, supra at 592; <u>Stirling v. C.I.R.</u>, 998 F. Supp. 640, 642 (E.D. N.C. 1997).

Further, to the extent that Behr argues that the lien was improper because it was for more than what he asserts that he owed the IRS, that would be a challenge to the assessment, which cannot be heard under Section 7432.  See, <u>PCCE, Inc. V. United States</u>, 159 F.3d 425, 428-29 (9th Cir. 1998)(taxpayer cannot "bootstrap" a disagreement about an assessment to a suit alleging failure to release a lien). Accordingly, we recommend the dismissal of Behr's claim for a failure to release the lien.

Although Behr does not specifically reference this portion of the statute, Section 6325(b) also allows the IRS to discharge part of a property, that is subject to a lien, when the Secretary determines that the fair market value of that part of the property is at least double the amount of the unsatisfied liability which secured by the lien,

among other circumstances.[22]  See, Title 26 U.S.C. §6325(b)(1).  Such an action is left to the IRS's discretion.  See, Title 26 C.F.R. §301.6325-1(b)(1)(I); In re Cleary, 210 B.R. 741, 746-47 (Bkrtcy. N.D. Ill. 1997)("The language of [Section 6325(b)] is discretionary, not mandatory, with respect to the IRS's actions."); E.J. Friedman Co., Inc. v. United States, 6 F.3d 1355, 1359 (9th Cir. 1993)(finding the denial of a certificate of discharge to be committed to agency discretion, and unreviewable under the Administrative Procedure Act, Title 5 U.S.C. §§ 701-706).

Here, Behr does not allege that he requested a discharge of his property before the tax sale on March 14, 2007, although he alleges he did so in April of 2008, more than one (1) year after that sale.  Even if he did allege that he applied for a discharge at the relevant time, Behr alleges no facts which could show a violation of the regulations that govern the issuance of a discharge of property.  See, e.g., In re Bowen, 151 F.2d 690, 692 (3rd Cir. 1945)(the taxpayer is not required to "acquire all available information and put it at the disposal of [the IRS].");  see also, United States v. Polk,

_____

[22]We recognize that Section 7432 provides a cause of action for the failure to "release a lien," pursuant to Section 6325, without specifying a subsection, see, Title 26 U.S.C. §7432(a), and the refusal to issue a certificate of discharge, or to subordinate a lien, may not be actionable under Section 7432.  However, our analysis of those issues is the same whether pursuant to Section 7432, or Section 7433, as both require a violation of the statutory provisions.

- 48 -

822 F.2d 871, 874 (9th Cir. 1987). Accordingly, Behr has not stated a cognizable

claim as to the IRS's possible refusal to discharge his property from its lien before the

2007 tax sale.

Behr also alleges that he requested a subordination of the tax lien, in the amount

of $150,000.00, in a letter dated January 5, 2006, which was apparently denied. See,

Complaint, supra at ¶68, p. 28. The IRS may issue a certificate of subordination of

its lien if -- among other circumstances -- "the Secretary believes that the amount

realizable by the United States from the property to which the certificate relates, or

from any other property subject to the lien, will ultimately be increased by reason of

the issuance of such certificate and that the ultimate collection of the tax liability will

be facilitated by such subordination." Title 26 U.S.C. §6325(d)(2); Title 26 C.F.R.

§301.6325-1(d)(2). Behr argues that allowing him to obtain a mortgage, and finish

the projects to that property, would have been beneficial to the IRS, which we

liberally construe to be an allegation of an improper refusal to subordinate.

Even if Behr had properly shown that this claim is timely, the claim must also

fail. On a plain reading of the statute and regulation, as with a discharge of property,

subordination is within the Secretary's discretion. See, Title 26 U.S.C. 6325(d)(2);

Title 26 C.F.R. §301.6325-1(d)(2); see also, Kugler v. United States, 2000 WL

1274230 at *3 (W.D. Pa., July 10, 2000)(issuance of a certificate of subordination is an "exercise [of] discretionary authority").  In fact, an illustrative example, which is contained in the applicable regulation, discloses that, where a taxpayer could obtain a loan from a bank for a first mortgage on a property subject to the tax lien, "the appropriate official may, in his discretion, subordinate the tax lien * * * to the mortgage[.]"  Title 26 C.F.R. §301.6325-1(d)(2)(ii)(Example 1).  Behr has not alleged any facts that could show an abuse of discretion in failing to subordinate the tax liens, and so, Behr has failed to state a claim upon which relief could be granted in this respect.[23]

_____

[23]Behr also alleges that the IRS filed illegal liens, and levies, against his property and third parties, after selling his Minnesota property in 2007, and alleges that he filed a Request for Certificate of Discharge of Property on April 7, 2008, which was denied at least by April 28, 2008.  See, Complaint, supra at ¶65, p. 31.  Behr fails to state, with any specificity, when those liens or levies were filed, or what assets or monies were impacted.  Moreover, Behr does not allege to which property the Certificate request related, as he alleges that the IRS currently holds a lien on over $800,000.00 worth of his property, see, Behr's Response, at p. 7, nor does he allege a procedural deficiency with respect to those liens and levies.  Therefore, Behr has failed to state a claim upon which relief can be granted as to those liens and levies, as well as to the Certificate of Discharge, by failing to supply sufficient notice of the nature of his claims in his pleadings.  See, Shane v. United States, 2008 WL 101739 at *8 (D. D.C. January 9, 2008); Jaeger v. United States Government, 524 F. Supp.2d 60, 64-65 (D. D.C., December 20, 2007)(the plaintiff's failure to allege which liens were at issue "fail[ed] to satisfy the notice pleading requirements").  Further, to the extent that those claims are based upon Behr's belief that the IRS continues to pursue
(continued...)

Accordingly, after an exhaustive review of his Complaint, and its attached Exhibits, we find no basis upon which Behr could support his claim that the IRS undertook any collection action, "the natural consequence of which [wa]s to harass, oppress, or abuse," in violation of Section 6304, nor any other statutory violation in the allegations of the Complaint, which could support a claim under Section 7433, or under Section 7422. Having carefully considered the allegations, and finding that, at their roots, they are based upon Behr's disagreement with the IRS over the amount of his tax liability, as to which this Court has no jurisdiction, we recommend that Behr's Complaint be dismissed, with prejudice.

NOW, THEREFORE, It is --

RECOMMENDED:

1.     That the Defendant's Motion to Dismiss [Docket No. 5] be granted.

2.     That the Plaintiff's Motion to Dismiss in Part [Docket No. 11] be denied.


Dated:  February 8, 2010          *s/Raymond L. Erickson*
                                  Raymond L. Erickson

---

[23](...continued)
inaccurate assessments, they fail for the reasons we have address in the text of this Opinion.

CHIEF U.S. MAGISTRATE JUDGE

**NOTICE**

Pursuant to Rule 6(a), Federal Rules of Civil Procedure, D. Minn. LR1.1(f), and D. Minn. LR72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties **by no later than February 22, 2010**, a writing which specifically identifies those portions of the Report to which objections are made and the bases of those objections. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.

If the consideration of the objections requires a review of a transcript of a Hearing, then the party making the objections shall timely order and file a complete transcript of that Hearing by no later than **February 22, 2010**, unless all interested parties stipulate that the District Court is not required by Title 28 U.S.C. §636 to review the transcript in order to resolve all of the objections made.